UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LONNIE B. TRASK,<br><br>  Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>  Defendant. | CASE NO. C04-2102-JCC-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Lonnie B. Trask proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative Law Judge (ALJ).

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that the Commissioner be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1951.[1]  He has the equivalent of a high school education and over two years of post secondary education.  He previously worked as a welder and video installer

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

helper.

Plaintiff filed an application for DI benefits on March 23, 2000, alleging a disability onset date of June 23, 1999. His application was denied initially and, instead of appealing, he reapplied the application on January 11, 2001. That application was denied initially and on reconsideration, and plaintiff timely requested a hearing.

ALJ Don Hyatt held a hearing on March 11, 2003. (AR 508-42.) He heard testimony from plaintiff, medical expert Dr. Larry Hart, and vocational expert Susan Berquett. ALJ Hyatt held a supplemental hearing on September 10, 2003, in which he took additional testimony from Dr. Hart. (AR 543-74.) On February 18, 2004, ALJ Hyatt issued a decision denying plaintiff's application for DI benefits. (AR 16-26.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. (AR 7-9.) Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff engaged in substantial gainful activity up until June 23, 1999, but not thereafter. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's post traumatic stress disorder (PTSD), personality disorder, depressive disorder, and substance abuse through March 2002 severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that, although plaintiff met the disability standard under Listing 12.09 with consideration of his substance abuse, his impairments did not meet or equal a listed impairment absent consideration of substance abuse. If a claimant's impairments do not meet or

equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that plaintiff could not perform his past relevant work, but had the RFC for medium work with no public contact, only incidental contact with coworkers, and simple, repetitive work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found that plaintiff could perform work existing in significant levels in the national economy, including work as an industrial cleaner, microfilmer, copy machine operator, and small product assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and his findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Here, plaintiff argues that the ALJ failed to properly evaluate the opinions of his medical providers and the examining physicians, erred in rejecting his credibility, failed to give proper consideration to the Veterans Administration's (VA) determination of disability, and erred in finding drug and alcohol abuse a material factor contributing to disability. He asserts that the evidence, including the opinions of his treating sources and the examining physicians, his testimony, and the VA's determination, should be credited as true, and this matter remanded for an award of benefits. The Commissioner argues that the decision is supported by substantial evidence and should be affirmed. For the reasons described below, the undersigned agrees with

the Commissioner that the decision should be affirmed.

<u>Opinions of Physicians and Other Treating Sources</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). *See also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (opinions of specialists given more weight than non-specialists). Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

The ALJ may accord the opinions of "other sources," such as nurse practitioners, less weight than opinions from "acceptable medical sources," such as physicians and licensed psychologists. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) (citing 20 C.F.R. §§ 404.1513, 416.913, 404.1527 and 416.927)). The opinions of other sources are given the weight of lay evidence. The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In this case, the ALJ described the opinions of plaintiff's various mental health providers as "mixed, and vary[ing] from statements that the claimant is disabled to no mention of any degree

of disability[.]" (AR 18.) He noted: "The weight to be given to these sources is complicated by the fact that none of those reporting have terminal degrees, but are counselors, therapists, and nurse practitioners. Consultative evaluations, while citing some significant limitations, do not conclude that his symptoms are so severe that he is disabled based on medical factors alone[.]" *Id.*

The ALJ then described the testimony of the medical expert, Dr. Hart, as follows:

> To assist in the evaluation, the expertise of a medical expert has been a significant contribution. Psychologist Larry S. Hart, Ph.D., evaluated the entire record and testified at both hearings. Dr. Hart pointed out that in determining that the claimant experienced a [PTSD] so severe that disability was warranted 25 years after the trauma, the [VA] failed to consider the effect of substance abuse on the claimant's condition. The accuracy of this observation is confirmed by the assessment of Carl W. Miller, MSW, a counselor at a Vet Center.[2] In closing the claimant's file due to unexplained absences after providing 24 individual sessions, 37 group sessions, 6 family sessions, and the claimant missing 19 appointments, over a two year period from 1998 to 2000, Mr. Miller states that the claimant will need to be clean and sober before starting back with treatment (Exhibit 4F). Mr. Miller also states that the prognosis is poor given the claimant's severe personality disorder. He does not mention [PTSD]. At the March 11, 2003, hearing Dr. Hart explained that the objective record supports the diagnoses of major depression, [PTSD], personality problems, and a history of alcohol and substance abuse. He noted that, despite these impairments, the objective information supports the conclusion that cognitive problems are marginal. He also pointed out that the assessment made in a March 27, 2002, report by James M. Ward, ARNP, is clearly in conflict with the psychological information as it makes the claimant appear far more mentally impaired than is warranted (Exhibit 12F). The medical expert also noted that information in the consultative evaluation by David deVidal, Ph.D., indicates that the problems of alcohol and drug abuse are resolved, at least by the claimant's report (Exhibit 15F). The record was left open to obtain information from Dr. deVidal regarding the test results.
>
> A second hearing was held on September 10, 2003[.] In the interim, a March 18, 2003 statement was provided by Dr. deVidal (Exhibit 17F). Here, he states that the degree of memory impairment experienced by the claimant, by itself, would not make him unemployable. The medical expert, Dr. Hart, pointed out that the results of the MMPI are not valid due to clear exaggeration on the part of the claimant, the claimant has a negative attitude toward work in general, and he does not want a positive outcome from treatment. These assessments by the medical expert are fully supported by the treatment record, which contains repeated examples of non-compliance with treatment recommendations, missed appointments, being late for appointments, stopping medications unilaterally, exaggeration of both physical and mental symptoms, and a conscious decision to pursue disability so that he will not have to deal with people.

---

[2] The ALJ refers to this medical provider as both "Miller" and "Tiller." A review of the record indicates that his last name is properly spelled "Tiller." (AR 209.)

(AR 19.) The ALJ also noted Dr. Hart's testimony that plaintiff's alcohol and substance abuse significantly impacted the severity of his impairments. (AR 20.)

Finally, after describing records from various other sources, the ALJ concluded:

> As will be discussed, significant weight cannot be given to any of these evaluations. The treatment records and statements indicating the belief that the claimant is disabled are not from or by the best acceptable medical sources, such as medical doctors or psychologists with a Ph.D. While one reference lists a Ph.D. for Peggy J. Shepherd, her primary designation is PMHNP, psychiatric mental health nurse practitioner (Exhibit 5F). Michael B. Jackson lists ARNP, or alcohol rehabilitation nurse practitioner, and James M. Ward lists ARNP and CNS, or alcohol rehabilitation nurse practitioner and clinical nurse specialist. Carl W. Miller at the Vet Center lists an MSW, or master in social work (Exhibits 6F, 11F, and 12F). Both Ms. Shepherd and Mr. Jackson urge that the claimant is so disabled that he is virtually incapable of functioning, let alone working. However, one statement by Mr. Jackson was written to obtain insurance relief with a credit union, and the other states that drug and alcohol abuse are not a factor in the claimant's disability. Mr. Jackson had treated the claimant for only a very brief period when he made these statements. The statement by Ms. Shepherd ignores the claimant's decision to pursue full disability so he won't have to deal with people, which is clearly stated in the record, and obvious factors such [stet] medical non-compliance with treatment and medications. Both of these parties believe the claimant to be disabled due to PTSD, and cite the fact that he has been found disabled due to PTSD by the [VA]. The claimant, who receives a substantial [VA] disability pension, also believes he is entitled to Social Security disability on this basis. Mr. Ward, who evidently ignores the multiple reports showing significant lessening of symptoms, states that the claimant is compliant with the care plan, takes medication as prescribed, and attends regular appointments (Exhibit 13F). He does not mention that he sees the claimant only every two months or more (Exhibit 12F).
>
> While findings of disability made by other authorities must be considered in the determination of Social Security disability, they are not controlling. The standard for disability used by the [VA] is not the same as that used by Social Security. The evaluation by Julia A. Wong-Ngan, Ph.D., found in the [VA] records, does not indicate that the claimant is entirely incapable of all work (Exhibit 5F). There is also evidence in the record that Mr. Trask has conflicts with treating sources, and he may be going back and forth, or forum shopping, to the source which gives him what he wants (Exhibit 11F). Finally, the treatment notes from Carl W. Tiller, MSW, should be considered. Based on elapsed time and number of contacts, Mr. Miller is likely far more familiar with the claimant. The treatment notes from this source, which are concurrent with those of Ms. Shepherd, contain frequent references to drug and alcohol abuse, as well as significant non-compliance in the form of missed appointments (Exhibit 4F). When closing the claimant's treatment due to the large number of missed appointments, Mr. Miller does not cite PTSD as a major factor, but notes that his prognosis is poor given his severe personality disorder and polysubstance abuse. As covered in the analysis of whether the claimant experiences an impairment which meets or equals a Listing, other evaluations do not support the allegations of the claimant. While listing impairments in conclusion, Lisa Sjodin, M.D., also notes that there are significant subjective symptoms of mental limitations

01      (Exhibit 1F). Both of the consultative evaluations of the claimant's physical capacity,
        which he alleges is severely limited by pain and physical restrictions, found an absence
02      of an objective basis to support the specific problem alleged. Finally, as previously
        discussed, David deVidal, Ph.D., states that the degree of memory impairment, even
03      if fully credited, would not make the claimant unemployable (Exhibit 17F). This
        evaluation lists reported activities such as feeding chickens, mowing the lawn, and
04      using a computer for email and other activities, which would argue against disabling
        memory, attention, and concentration problems (Exhibit 15F). The testing also raised
05      the issue of symptom magnification.

06  (AR 21-23.)

07       Plaintiff argues that the ALJ erred in finding that the opinions of non-examining medical

08  advisor Dr. Hart outweighed the opinions of examining psychologist Dr. deVidal, examining

09  psychiatrist Dr. Sjodin, and his other mental health care providers. He maintains that, rather than

10  providing specific and legitimate reasons for rejecting their opinions, the ALJ failed to sufficiently

11  address the opinions of Dr. deVidal and virtually ignored the opinions of Dr. Sjodin. Plaintiff

12  asserts that the opinions of Drs. deVidal and Sjodin are wholly consistent with and provide

13  significant support to the opinions of nurse practitioners Shepherd, Jackson, and Ward.[3]

14       The Commissioner argues that the ALJ reasonably relied on the testimony of Dr. Hart,

15  who himself relied on clinical evidence in the record in rendering his opinion. The Commissioner

16  avers that the ALJ gave germane reasons for rejecting the various lay opinions of record. Finally,

17  she notes that the ALJ did not entirely reject the opinions of various examiners, and, instead,

18  observed that Julia Wong, Ph.D. did not indicate plaintiff could not work and that Dr. deVidal

19  found that, even accepting plaintiff's memory impairments as tested, he would still be employable.

20       The undersigned agrees with the Commissioner. Relying on the contradictory opinion of

---

[3] In his opening brief, plaintiff argued that the ALJ should have given controlling weight to Peggy Shepherd as his treating physician. (*See* Dkt. 13 at 15-17.) As noted by the ALJ, Shepherd's primary designation at the VA appeared to be as a PMHNP. (*See, e.g.*, AR 303 (record signed by "PEGGY J SHEPHERD, PhD, PMHNP PSYCHIATRIC MENTAL HEALTH NURSE PRACTITIONER[.]")) In any event, plaintiff concedes in his reply that there is a conflict in the record as to whether Shepherd is a Ph.D. in addition to a PMHNP, and otherwise refers to Shepherd as a nurse practitioner. (*See* Dkt. 18 at 2 & n.1.) Accordingly, the Court need not further address this issue.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01 non-examining physician Dr. Hart, the ALJ gave specific and legitimate reasons for rejecting the
02 opinions of Drs. deVidal and Sjodin. (*See* AR 19 and 23 as quoted above.)  Moreover, those
03 reasons were supported by substantial evidence in that Dr. Hart relied on specific clinical evidence
04 in the record in rendering his contradictory opinion. (*See* AR 19-20.) *See also*, *e.g.*, *Roberts v.
05 Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (where the medical expert disagreed with an examining
06 physician's findings and that disagreement was based on plaintiff's neuropsychological test scores,
07 ALJ's justification for adopting the medical expert's opinion was specific and legitimate and based
08 on substantial evidence).  The ALJ also addressed the opinions of plaintiff's other treating sources
09 and appropriately provided germane reasons for rejecting those opinions. (*See* AR 21-23 as
10 quoted above.)  Accordingly, plaintiff fails to demonstrate error in the ALJ's treatment of the
11 various physicians and other treating sources.

12 <u>Credibility</u>

13 Absent evidence of malingering, an ALJ must provide clear and convincing reasons to
14 reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See
15 also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an
16 ALJ must render a credibility determination with sufficiently specific findings, supported by
17 substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what
18 testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81
19 F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her
20 conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."
21 *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the
22 ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between
23 his testimony and his conduct, his daily activities, his work record, and testimony from physicians
24 and third parties concerning the nature, severity, and effect of the symptoms of which he
25 complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

26 In this case, the ALJ assessed plaintiff's credibility as follows:

> In the same manner that the medical record does not support the allegations of the claimant or some of the treating sources, the claimant's own activities reflect significant inconsistencies with the limitations claimed. Mr. Trask alleges being entirely incapable of working due to cognitive limitations and anger problems, as well as needing significant assistance in daily life due to concentration and attention deficits. He has, evidently, been sufficiently able to function such that he has a place to live and does not have to go without basic necessities. While alleging antisocial behavior, such as significant anger outbursts, he is in a relationship and the couple lives with his mother. There are no reports of resulting legal problems, which could be expected with such behavior. The medical records even include Mr. Trask reporting being relaxed, focused, and in a good mood following a vacation to Idaho, which evidently was a fishing trip (Exhibit 13F). So the claimant is able to stay out of legal trouble, function day to day, travel, and deal with bureaucracy, such as the Veteran's Administration, the Social Security Administration, and getting an out of state fishing license. The claimant's attempt to establish disability because he is so out of control is inconsistent with his history.

(AR 23.) As described above, the ALJ also noted evidence of exaggeration and a negative attitude towards work on psychological testing, and stated that this testing "raised the issue of symptom magnification." (AR 19, 23.) The ALJ additionally noted "repeated examples of non-compliance with treatment recommendations, missed appointments, being late for appointments, stopping medications unilaterally, exaggeration of both physical and mental symptoms, and a conscious decision to pursue disability so that he will not have to deal with people." (AR 19.)

Plaintiff asserts that he produced sufficient evidence to corroborate his testimony that his anger issues limit him to almost no social contact. (*See* AR 512 (plaintiff testified that he was fired from his last job due to anger issues) and AR 189 (statement from Jamie Philpot supporting plaintiff's anger issues and social isolation)). Plaintiff describes the ALJ's reliance on his ability to stay out of legal trouble, function day-to-day, travel, and deal with bureaucracy as seemingly requiring an individual to vegetate in a dark room, excluded from all social contact in order to be found disabled. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1989) ("'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)).

The Commissioner asserts that the ALJ appropriately used ordinary techniques of credibility assessment in evaluating plaintiff's credibility. She further notes "objective evidence

raising the question of malingering, or at least self deception, evidence of effective therapy and treatment, evidence of non-compliance, such as by no shows . . ., and relatively robust and self-reliant daily activities, including a dogged perseverance to obtain various benefits from government." (Dkt. 17 at 7.)

The ALJ did not affirmatively assert that evidence of malingering exists in this case. Instead, while noting the possibility of exaggeration or symptom magnification, the ALJ found plaintiff not totally credible for the reasons set forth above. (*See* AR 19, 23 and 25.) While not all of the reasons proffered by the ALJ are equally persuasive in implicating plaintiff's credibility, they nonetheless constitute clear and convincing reasons to reject his testimony. As such, plaintiff also fails to demonstrate error in the ALJ's credibility assessment.

<u>VA Determination of Disability</u>

An ALJ must ordinarily give "great weight" to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, because the VA and SSA criteria for determining disability are not identical, the ALJ may give the VA rating less weight provided "he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

Plaintiff argues that the ALJ failed to give proper consideration to the VA's determination of disability. However, the undersigned finds that the ALJ provided persuasive, specific, and valid reasons supported by the record in giving the VA disability rating less weight.

First, as asserted by the Commissioner, the ALJ found that the VA under-rated the role of substance abuse prior to March 2002. (AR 18 ("While certain [VA] sources deny that polysubstance abuse is a concern, the objective record, as well as other evaluations, shows the claimant to have a history of substance abuse which has a definite effect on his functional ability, at least through March 2002 (Exhibits 1F, 4F, 5F, and 13F).")) As discussed above, instead of relying on VA sources, the ALJ relied on the contrary opinion of Dr. Hart. (*See* AR 20 (noting Dr. Hart's testimony that plaintiff's alcohol and substance abuse significantly impacted the severity of his impairments.)) The ALJ also specifically contrasted the opinion of ARNP Jackson, who

stated that drug and alcohol were not a factor in plaintiff's disability after only treating him for a short time, with the more extensive treatment notes of MSW Tiller, which contain frequent references to drug and alcohol abuse, evidence of significant non-compliance in the form of missed appointments which resulted in the cessation of treatment, and a poor prognosis based, in part, on polysubstance abuse. (AR 22-23.)

Second, as evidenced in the portions of the ALJ's decision excerpted above, the ALJ provided germane reasons for rejecting the opinions of the "other sources" employed by the VA. While plaintiff takes issue with some of the specific reasons proffered by the ALJ for rejecting the opinions of these sources, taken as a whole, they constitute persuasive, specific, and valid reasons supported by the record to give the VA disability rating less weight.

Finally, it should be noted that the ALJ was "mindful" of the decision in *McCartey*, 298 F.3d at 1076, requiring that great deference be afforded VA disability determinations. He nonetheless concluded that, in this case, "disability is not supported by the record as a whole and no deference is afforded the VA determination." (AR 25.)

In sum, for the reasons described above, plaintiff fails to demonstrate error in the ALJ's treatment of the VA disability determination.

### Impact of Drug and Alcohol Use

An individual is not considered to be disabled if alcoholism or drug addiction would be a contributing factor material to a determination that the individual is disabled. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Implementing regulations specify that alcoholism or drug addiction is a contributing factor material to a disability determination if an individual would not be disabled if he stopped using alcohol or drugs. *See* 20 C.F.R. §§ 404.1535(b), 416.925(b). As with each of the first four steps of the disability evaluation process, the claimant bears the burden of showing that his or her drug or alcohol addiction is not a contributing factor material to his or her disability. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

Plaintiff argues that the record compels the conclusion that his symptoms would persist

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

even without consideration of drug or alcohol use. In support, he notes the opinion of ARNP Jackson and his own testimony. (*See*, *e.g.*, AR 349 and AR 516.) The Commissioner contends that this argument lacks merit, pointing to the ALJ's reliance on the medical expert's opinion, who opined that alcohol and substance abuse had a significant impact on the severity of plaintiff's impairments. (*See* AR 20 and AR 553-57.)

The ALJ appropriately considered plaintiff's condition with and without consideration of the use of drugs and alcohol:

> The medical expert explained how, as shown in the objective record, alcohol and substance abuse had a significant impact on the severity of these impairments. With the presence of substance abuse there was a moderate to marked restriction of activities of daily living; moderate to marked difficulties in maintaining social functioning; and moderate to marked difficulties in maintaining concentration, persistence, or pace. In the absence of substance abuse, restriction of activities of daily living are mild to moderate; difficulties in maintaining social functioning are moderate; and difficulties in maintaining concentration, persistence, or pace are also mild to moderate. The claimant has no history of decompensation, repeated or otherwise, with or without substance abuse. Therefore, it can be seen that when abusing alcohol and substances the mental impairments meet the requirements of Sections 12.04, 12.06, and 12.08, under Section 12.09. While the claimant is disabled with drug and alcohol abuse, he would not be eligible for benefits. Giving the claimant the benefit of doubt, it is accepted that he stopped abusing alcohol as of March 2001, and stopped abusing marijuana as of March 2002. In the absence of polysubstance abuse no mental impairment experienced meets or equals a Section of the Listing of Impairments.

(AR 20.) Also, as discussed above, the ALJ provided specific and legitimate reasons supported by substantial evidence in adopting Dr. Hart's opinion on this issue. Moreover, as also discussed above, the ALJ provided germane reasons for rejecting ARNP Jackson's opinion on this issue, as well as clear and convincing reasons for rejecting plaintiff's own testimony. As such, plaintiff failed to meet his burden of showing that drug or alcohol use was not a contributing factor to his disability.

/ / /

/ / /

/ / /

/ / /

## **CONCLUSION**

For the reasons set forth above, the Commissioner's decision in this case should be affirmed. A proposed Order accompanies this Report and Recommendation.

DATED this  12th  day of July, 2005.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13